Clayton J. Vignocchi
James H. Power (Pro hoc vice submission forth coming)
F. Robert Denig (Pro hoc vice submission forth coming)
HOLLAND & KNIGHT LLP
263 Tresser Boulevard
Suite 1400
Stamford, CT 06901
Telephone: (203) 905-4500
Email: clayton.vignocchi@hklaw.com

Attorneys for Plaintiff
*Blue Fin Tankers, Inc.*

UNITED STATES DISTRICT COURT
CONNECTICUT

| | |
|---|---|
| BLUE FIN TANKERS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> BOMIN DEUTSCHLAND GMBH, <br><br> Defendant. | 19 CV _____ (\_\_\_\_) <br><br> **COMPLAINT** |

Plaintiff, Blue Fin Tankers Inc. ("Blue Fin" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, respectfully submits this Verified Complaint against Bomin Deutschland GmbH ("Bomin" or "Defendant"), and alleges as follows:

**JURISDICTION, PARTIES & VENUE**

1. This is an action arising out of a maritime contract for the provision of marine fuel between Plaintiff Blue Fin and Defendant Bomin.

2. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves the breach of a maritime contract. This case

falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.

3. Blue Fin is a company organized under the laws of the Republic of the Marshall Islands with offices at 383 Main Ave. Suit 505, Norwalk CT, 06851.

4. Upon information and belief, Bomin is a company organized under the laws of Germany with a principal place of business at Koreastrasse 7, 20457 Hamburg. Pursuant to the subject contract at issue in this action, Bomin has conceded to the jurisdiction of this court, and Bomin's tortuous conduct caused Blue Fin damages within this district..

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

6. At all relevant times, Blue Fin is the time chartered owner of the M/V Ridgebury Alina L (Official No. 9219056) (the "Vessel").

7. Bomin is a marine fuel trader and physical supplier with operations worldwide, and specifically in Port Louis, Mauritius.

8. At all relevant times, the Vessel was under charter to Resource Marine Pte Ltd. (the "Charterer") for a voyage from Freeport, Bahamas to Singapore (the "Voyage"), pursuant to a charter party agreement dated May 29, 2018 (the "Charter Party").

9. Upon sailing from Freeport, Blue Fin and the Charterer had anticipated that the Vessel would need to take on fuel enroute to Singapore, as the Vessel did not have sufficient fuel onboard to complete the Voyage. As such, Blue Fin made arrangements for the Vessel to take on fuel in Port Louis, Mauritius.

10. On or about July 3, 2018, Blue Fin ordered marine fuel for the Vessel from Bomin. Specifically, Blue Fin ordered 800 – 1,000 metric tons of IFO 180 CST RMG 180 at a price of 508 US dollars per ton (the "bunkers") to be delivered to the Vessel in Port Louis.

11. Bomin sent to Blue Fin a confirmation of order dated July 3, 2018 (the

"Confirmation of Order"), confirming that Blue Fin had ordered the bunkers from Bomin on behalf of the Vessel, and that the bunkers were to be delivered to the Vessel in Port Louis on July 14, 2018. Attached hereto as **Exhibit A** is a true and correct copy of the Confirmation of Order.

12. The Confirmation of Order further incorporates Bomin's General Conditions of Sale and Delivery ("Bomin's General Conditions"). Attached hereto as **Exhibit B** is a true and correct copy of Bomin's General Conditions.

13. Clause 18.1 of Bomin's General Conditions states, in relevant part:

> This agreement is subject to General Maritime Law of the United States of America, place of jurisdiction the United States of America, or any other law and jurisdiction as specified in the Contract.

14. Upon information and belief, in order to fulfil Blue Fin's order, Bomin procured the marine fuel from a Shell Oil entity that supplies maritime grade fuels ("Shell").

15. The Vessel arrived in Port Louis on or about July 15, 2018. The Vessel called on Port Louis solely to take on the bunkers.

16. At some time prior to delivering the bunkers to the Vessel, Bomin received information that the bunkers it received from its supplier Shell were off spec and were not suitable for use and should not be delivered to the Vessel.

17. On morning of July 15, 2018, Bomin, having information in its possession that the bunkers were off-spec and not suitable for use, allegedly tried to contact its agent that was scheduled to deliver the bunkers to the Vessel in order to instruct its agent that the bunkers should not be delivered. Non-the-less, Bomin failed to stop its agents and the bunker the barge from delivering the off-spec and unsuitable fuel to the Vessel. As such, Bomin delivered to the Vessel bunkers that it knew were off-spec and not suitable for use.

18. When the delivery of bunkers to the Vessel was complete, Bomin's barge provided the Vessel with a Bunker Delivery Note ("BDN") which had been issued by Bomin.

3

The BDN, contrary to what Bomin knew of at the time of delivery, further confirmed and guaranteed that the fuel oil supplied by Bomin to the Vessel was in conformity with regulation 14(1) or 14(4a) and regulation 18(1) of Annex VI of Marpol 73/78. Bomin issued the BDN to Vessel even though Bomin knew at the time the BDN was issued that the bunkers delivered to the Vessel were off-spec, unsuitable for use, and were not in conformity with regulation 14(1) or 14(4a) and regulation 18(1) of Annex VI of Marpol 73/78.

19. On July 15, 2018, after the bunkers had already been delivered to the Vessel, Bomin contacted Blue Fin and informed them that the bunkers were off-spec and could not be used. Bomin further informed Blue Fin that it was requesting further testing of the bunkers.

20. Blue Fin explained to Bomin that, due to the commitments of the Charter Party, it was imperative that the Vessel sail from Port Louis as soon as possible in order to complete the Voyage to Singapore and deliver the Charterer's cargo on time.

21. The price of the cargo being shipped by the Charterer onboard the Vessel was dependent on the Vessel arriving in Singapore on time. As such, the Charterer faced substantial damages if the Vessel was delayed. Furthermore, pursuant to the Charter Party Blue Fin would be liable to the Charterer for any damages the Charterer sustained resulting from delays related to time lost for bunkering or for taking on off-spec bunkers. Blue Fin did not want the Vessel to leave Port Louis with bunkers that could not be used because the Vessel would need to use the fuel in order to reach the scheduled destination of the Voyage.

22. In response, knowing of the risks facing Blue Fin and the Charterer, Bomin assured Blue Fin that it was safe for the Vessel to sail from Port Louis with the off-spec bunkers. Specifically, Bomin assured Blue Fin that the results of the initial test were incorrect, and that the further testing Bomin had requested would show that the bunkers were actually on-spec. Bomin also assured Blue Fin that if it turned out that the bunkers actually were off-spec, Bomin

4

would cover any costs or damages resulting from the Vessel having to deviate from the Voyage to take on fresh fuel.

23. Relying on Bomin's promises and assurances that the bunkers were on-spec and could be used, Blue Fin allowed the Vessel to sail from Port Louis before receiving the results from the secondary testing of the bunkers. Blue Fin would not have sailed the Vessel from Port Louis prior to receiving the results of the secondary testing had Bomin not made the assurance and promises described in paragraph 22.

24. Unfortunately, the results of the secondary testing confirmed that the bunkers were in fact off-spec and could not be used, and the Vessel had to deviate from the Voyage to take on fresh fuel in order to complete the Voyage.

25. Blue Fin thus had to make arrangements for the Vessel and take on fresh fuel in Galle, Sir Lanka while enroute to Singapore. When the Vessel arrived in Galle, however, bad weather prevented the Vessel from berthing. As such, the Vessel deviated to Colombo, Sri Lanka to take on fresh fuel. The Vessel eventually was able to take on fresh fuel on July 31, 2018. In total, the Vessel had to deviate from the Voyage for a total of six days in order to take on replacement fuel.

26. The Vessel did not arrive in Singapore until August 6, 2018. The Vessel, however, sustained physical damages to its fuel tank, piping, and fuel system as a result of the off-spec bunkers having been loaded onto the Vessel. Bomin later arranged to have the off-spec and contaminated bunkers removed from the Vessel.

27. Furthermore, the delay caused by having to deviate from the Voyage to take on fresh fuel caused the Charterer significant damages. Specifically, due to the delay, the Charterer suffered reduction in the price of its cargo, as well as other financial damages, in the amount of approximately $658,058.92. On September 3, 2018, the Charterer presented a claim against

Blue Fin in that amount under the terms of the Charter Party.[1]

28.     Blue Fin also incurred additional costs and expenses resulting from the deviation from the Voyage in the form of increased fuel consumption, lost time, additional steaming time, and other internal costs, in the amount of approximately $364,603.20.

## COUNT I – BREACH OF CONTRACT

29.     Plaintiff Blue Fin repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

30.     Bomin and Blue Fin had a contract for the supply of bunkers to the Vessel.

31.     Bomin breached that contract by knowingly delivering to the Vessel bunkers that were off-spec and were not suitable for use. Bomin was aware that the bunkers were off-spec prior to the bunkers being delivered to the Vessel. As such, Bomin intentionally delivered off-spec bunkers to the Vessel, which bunkers Bomin knew were not suitable for use.

32.     Bomin was grossly negligent in the performance of the contract by failing to make reasonable efforts to stop the delivery of the off-spec bunkers to the Vessel. Bomin failed to effectively communicate with its own barge to stop the delivery, and failed to contact the Vessel or contact Blue Fin prior to the delivery of the off-spec bunkers to warn them not to accept the bunkers. This failure constitutes gross negligence on Bomin's part.

33.     Furthermore, despite having information and test results to the contrary at the time of the delivery of the bunkers to the Vessel, Bomin either intentionally mislead, or was grossly negligent in representing to, Blue Fin that the bunkers were not off-spec and were useable. In reliance on Bomin's representations as to the quality of the bunkers after they were

---

[1] The Charterer's claim against Blue Fin is subject to and is currently being litigated in London arbitration. Blue Fin has raised certain defenses to the Charterer's claims. With regard to the Charterer's claim against Blue Fin, Blue Fin will not seek in this action the recovery from Bomin of any amounts in excess of the amount of any final award or judgment issued against Blue Fin in Charterer's favor.

#63190397_v1

delivered, the Vessel departed Port Louis rather than waiting for the results of secondary testing. The bunkers, however, were in fact off-spec and unsuitable as later confirmed by Bomin. As a result of Bomin's misleading or grossly negligent representations, the Vessel had to deviate from the Voyage and was substantially delayed.

34. Because of the those delays, and as a direct result of Bomin's breach of contract, Blue Fin breached the terms of the Charter Party and has sustained damages in the amount of approximately $1,022,662.12

35. The Vessel also sustained physical damages to its fuel tank, piping, and fuel system as a result of the off-spec bunkers having been loaded onto the Vessel in an amount that may be finally determined by this Court.

## COUNT II – BREACH OF WARRANTY

36. Plaintiff Blue Fin repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

37. In providing the Vessel and Blue Fin the BDN after delivering the bunkers to the Vessel, Bomin expressly warranted that the fuel delivered was in conformity with regulation 14(1) or 14(4a) and regulation 18(1) of Annex VI of Marpol 73/78.

38. At the time that Bomin issued the BDN, Bomin already knew that the fuel it had provided to the Vessel was off-spec, contaminated, and unsuitable for use, and was not in conformity with regulation 14(1) or 14(4a) and regulation 18(1) of Annex VI of Marpol 73/78.

39. Nontheless, Bomin stood by its warranty (knowing it to be false), and assured Blue Fin that, in spite of testing indicating that the bunkers were off-spec and contaminated, that further testing would show that the bunkers were actually on-spec, and that it was safe for the Vessel to depart from Port Louis with the bunkers on-board.

40. The bunkers were in fact off-spec and contaminated, and Bomin had knowingly

7

breached its express warranty that the bunkers were in conformity with regulation 14(1) or 14(4a) and regulation 18(1) of Annex VI of Marpol 73/78.

41. As a direct result of Bomin's breach of its express warranty, the Vessel was delayed from it Voyage causing Blue Fin damages in the amount of approximately $1,022,662.12.

42. The Vessel also sustained physical damages to its fuel tank, piping, and fuel system as a result of the off-spec and contaminated bunkers having been loaded onto the Vessel in an amount that may be finally determined by this Court.

## COUNT III – PROMISSORY ESTOPPEL

43. Plaintiff Blue Fin repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

44. After delivering the off-spec, contaminated, and unsuitable bunkers to the Vessel, Bomin assured Blue Fin that secondary testing would show that the bunkers were on-spec. Understanding that the Blue Fin was under pressure to sail the Vessel from Port Louis as soon as possible in order to meet its requirements under the Charter Party, Bomin further assured and promised Blue Fin that it would cover any costs or damages resulting from the Vessel having to deviate from the Voyage and take on fresh fuel after departing Port Louis.

45. Bomin expected, or should have expected, that its promise to cover any costs or damages resulting from the Vessel having to take on replacement fuel later in the Voyage would induce Blue Fin to sail the Vessel from Port Louis prior to receiving the results from the secondary testing.

46. Indeed, Bomin's promise was intended to and did induce Blue Fin to sail the Vessel from Port Louis prior to receiving the results from the secondary testing.

47. Blue Fin suffered a detriment by relying on Bomin's promises, in that secondary

testing confirmed that the bunkers were off-spec, contaminated, and unsuitable, and the Vessel had to deviate from the Voyage to take on fresh fuel. This deviation caused the Vessel to be subject to claims by the Charterer and cause Blue Fin damages in the amount of approximately $1,022,662.12.

## COUNT IV - NEGLIGENCE

48. Plaintiff Blue Fin repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

49. As a physical supplier of bunkers, Bomin had a duty to provide to the Vessel bunkers that were suitable and safe for use and not off-spec or contaminated.

50. Bomin breached this duty by delivering to the Vessel bunkers that Bomin knew were off-spec, contaminated, unsuitable, and which did not confirm with the governing regulations.

51. As a result of Bomin's breach of duty, the Vessel suffered physical damage to its fuel tank, piping, and fuel system in an amount that may be finally determined by this Court.

52. Furthermore, as a direct result of Bomin's breach of duty in knowingly providing the Vessel with off-spec and contaminated bunkers, the Vessel was delayed in completing the Voyage causing Blue Fin damages in the amount of approximately $1,022,662.12, which includes the Charterer's claims against Blue Fin.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Blue Fin demands judgment against Defendant Bomin as follows:

(i) Enter judgment in favor of Plaintiff Blue Fin against Defendant Bomin for damages as may be finally determined by this Court together with interest, reasonable attorneys' fees and costs; and

  (ii)  That the Court grant such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
   February 8, 2019

              HOLLAND & KNIGHT LLP

         By: _____
              Clayton J. Vignocchi – Bar No: ct30404
              James H. Power (Pro hoc vice submission forthcoming)
              F. Robert Denig (Pro hoc vice submission forthcoming)
              HOLLAND & KNIGHT LLP
              263 Tresser Boulevard
              Suite 1400
              Stamford, CT 06901
              Telephone: (203) 905-4500
              Email: clayton.vignocchi@hklaw.com
                -and-
              HOLLAND & KNIGHT LLP
              31 West 52nd Street
              New York, NY 10019
              Tel.: (212) 513-3200
              Fax: (212) 385-9010
              Email: clayton.vignocchi@hklaw.com

              Attorneys for Plaintiff,
              *Blue Fin Tankers, Inc.*